IN THE UNITED STATES COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Orlando Division

| | |
|---|---|
| **ELISABETH SERIAN,** | ) Civil Action No.: |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| **JETBLUE AIRWAYS CORP.,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF, SERIAN's COMPLAINT AND DEMAND
FOR JURY TRIAL**

This is an action under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*. ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008("ADAAA") and Title VII of the Civil Rights Act of 1964.

**INTRODUCTION**

Plaintiff, Serian, alleges that Defendant, JetBlue Airways Corp., ("JetBlue") discriminated against her when it failed to provide a reasonable accommodation based on her disability, created a hostile work environment, retaliated against her and then terminated her in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. §2000e *et seq*.; the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12101 et seq.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because action arises under the Constitution, laws or treaties of the United States.

2. This action is authorized and instituted pursuant to 42 U.S.C § 12111, 12112 *et seq.* and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged here to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Orlando Division.

## PARTIES

4. Plaintiff, is sui juris, and at all times relevant to this action, Elisabeth Serian ("Ms. Serian") was a resident of Orange County and residing in Orlando, Florida.

5. Upon information and belief, at all times material to this action JetBlue is an international airline headquartered New York JFK International Airport.

6. JetBlue maintains corporate offices in the state of Florida, located in Orlando, Florida.

7. At all times relevant to this action, Defendant has continuously done business in the state of Florida.

8. At all times relevant to this action, Defendant has had at least fifteen employees.

9. Defendant has continuously been an employer engaged in an industry affection commerce under the ADA, 42 U.S.C. § 12111(5) and (7),

10. At all times relevant hereto, Defendant has been a covered entity under the ADA, 42 U.S.C. § 12111(2).

## PRE-FILING COMPLIANCE

11. Prior to filing the instant action, Ms. Serian filed her grievance with the EEOC which issued their Notice of Right to Sue on September 25, 2023. See Exhibit "A" attached hereto.

12. Ms. Serian has complied with all pre-filing requirements and timely files this Complaint.

**STATEMENT OF FACTS**

13. According to JetBlue's website, the Company was "born at JFK in 2000, . . . and is now . . . [a] global [entity.]"[1]

14. Ms. Serian began working at JetBlue in March of 2014 as a flight attendant.

15. At all times during Ms. Serian's tenure with JetBlue she was a dedicated, reliable employee who was a team player.

16. Working for JetBlue was Ms. Serian's "dream job."

17. She was commonly referred to as the "Apple Girl" by the CEO because she left Apple, Inc. to work for JetBlue and was considered an exemplary employee.

18. At all times relevant Ms. Serian was able to carry out all tasks demanded of her as a flight attendant.

19. In or around mid-2020, the TSA began to require that all airline passengers and employees wear masks due to the coronavirus pandemic.

20. This new requirement was not part and parcel of the employment agreement between JetBlue and Ms. Serian.

21. However, Ms. Serian, being a team-player complied with the requirement until her health began to decline and she was experiencing respiratory difficulties, including, but not limited to vomiting based on the long-term wearing of the face mask under highly pressurized air.

22. Ms. Serian experienced a visceral decline in her health as a proximal cause due to the face mask which inhibited her breathing for long periods of time, up to eighteen hours per day.

23. Due to Ms. Serian's health concerns, she had an examination by a health-care practitioner who issued a letter on July 10, 2020, indicating that Ms. Serian's health was at issue due to the face mask mandate and indicated that she required a reasonable accommodation.

---

[1] https://www.jetblue.com/our-company

24. In or around July 2020, Ms. Serian made a formal request for an accommodation from wearing a face mask.

25. She was told it's either wear a face mask or get a leave of absence; Ms. Serian was even denied an accommodation of wearing a face shield instead of a mask.

26. There was no meaningful discussion regarding Ms. Serian's health concerns and a possibility of a reasonable accommodation based thereon.

27. Ms. Serian from thereon complied with the mandate of wearing the mask, but her health severely deteriorated during the next two years. Her respiratory system was inhibited and caused her to vomit as many as nine times per flight.

28. She spent her days off between flights trying to recover from her respiratory distress, fatigue and nausea.

29. She began to believe that her health could no longer withstand the mask requirement but during 2022 it seemed possible that the mandate would soon come to an end.

30. Ms. Serian thought if her health could tolerate the mask for just a while longer, then the mandate would be rescinded and perhaps her health would improve.

31. Ms. Serian emailed the Company numerous times during this period to reconsider her requested accommodation which continued to fall on deaf ears.

32. During this time, Ms. Serian was very vocal on JetBlue's unofficial private Facebook page about the numerous articles and peer-reviewed studies that indicated that, not only are masks ineffective against fighting covid, but that they were actually detrimental to one's health when worn for extended periods of time, especially at high altitudes.

33. During this time period, certain members of JetBlue took issue with Ms. Serian's sharing of articles and scientific studies regarding masks. These employees began bullying and harassing her through JetBlue's Facebook page.

34. Ms. Serian reported the crew members who were bullying her and JetBlue failed to take any action whatsoever.

35. On or about April 18, 2022, there was to be a meeting between JetBlue and Ms. Serian regarding her request for a reasonable accommodation.

36. This was a private investigatory meeting but it was leaked out to other employees who knew prior to Ms. Serian having knowledge of the meeting.

37. Other employees told Ms. Serian that she was going to be suspended at this meeting

38. JetBlue clearly breached Ms. Serian's confidentiality by discussing the meeting with other employees.

39. During this meeting on April 18, 2022, Ms. Serian demonstrated through screenshots and screen recordings that her confidentiality had been violated by employees being aware of what was to take place during the investigatory hearing. She brought this evidence to demonstrate the pervasive bullying and harassment from other crew members.

40. Ms. Serian's presented evidence which highlighted the negative impact of wearing a face mask for prolonged periods during high altitudes and she officially reiterated her request for accommodation from wearing the face mask.

41. On or around the time of the investigatory hearing of April 18, 2022, the mask mandate was rescinded. Therefore, Ms. Serian's health issues would no longer be a concern.

42. At this point, since the mandate was rescinded, Ms. Serian could have gone back to work but instead was suspended pending the outcome of the investigatory hearing.

43. Upon concluding their investigation, JetBlue ironically and inexplicably, revised the subject matter from Ms. Serian's request for accommodation to JetBlue accusing Ms. Serian of cyberbullying.

44. This was simply a clumsily orchestrated excuse for terminating Ms. Serian.

45. JetBlue did not provide any documents to demonstrate this claim.

46. JetBlue alleged that Ms. Serian violated social media policies; including, but not limited to cyberbullying.

47. None of Ms. Serian's complaints of cyberbullying were investigated.

48. Ms. Serian had previously and during the meeting lodged numerous complaints of bullying and harassing by other crew members and which Ms. Serian presented evidence but JetBlue summarily ignored her evidence and testimony.

49. Ms. Serian's termination was a direct result of retaliatory conduct by the company as Ms. Serian expressed her opinions about the detriments of mask wearing during prolonged periods especially at high altitudes.

50. According to JetBlue, Ms. Serian was terminated immediately due to social media violations which were never brought to her attention, but the company continually ignored formal complaints lodged by Ms. Serian about the pervasive bullying on social media by other crew members.

51. JetBlue falsely claimed that Ms. Serian bullied a crew member without providing her any due process whatsoever.

52. JetBlue failed to provide any documentary evidence to support their conclusion.

53. JetBlue, in reality, terminated Ms. Serian because she required a reasonable accommodation from wearing a face mask and was suffering adverse health conditions.

54. JetBlue retaliated against Ms. Serian because she shared her opinions and scientific studies about the detrimental effects of long-term use of face masks.

55. JetBlue allowed other crew members to bully, cyberbully, and harass Ms. Serian with their explicit knowledge without taking any action whatsoever, thus creating a hostile work environment.

56. Not only did Ms. Serian suffer physically from respiratory illness and nausea from the mask requirement, but she was denied any reasonable accommodation such as wearing a face shield and her health continues to suffer to this day.

57. Ms. Serian has also suffered emotional damage as she truly enjoyed working at JetBlue as it was her dream job.

58. Ms. Serian would be celebrating her ten-year anniversary in 2024 had she not been wrongfully terminated.

59. Ms. Serian has also suffered financial damage due to being terminated and having early withdrawal of monies from her 401k.

60. JetBlue has continued to lead Ms. Serian on in thinking that she may get her job back.

61. As recent as December 12, 2023, mediation was held between JetBlue and Ms. Serian concerning her dismissal where Ms. Serian believed she would be hired back by JetBlue.

62. JetBlue's failure to accommodate Ms. Serian's disability with a reasonable accommodation led to their intentional retaliatory conduct of allowing crew members to harass her and eventually resulting in her termination.

63. JetBlue's failure to put forth any action whatsoever to cease the bullying behavior of other crew members against Ms. Serian created an overly pervasive hostile environment.

## CAUSES OF ACTION

### i. FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA

64. Ms. Serian is a qualified individual with a disability as defined by the ADA.

65. JetBlue discriminated against Ms. Serian in violation of 42 U.S.C. § 12112(a) and (b)(5) by not providing a reasonable accommodation.

66. JetBlue refused to allow any reasonable accommodation including but not limited to wearing a face shield, which would require no business burden whatsoever to JetBlue.

67. JetBlue failed to engage in any meaningful interactive process in good faith to provide a reasonable accommodation to Ms. Serian.

68. JetBlue failed to provide a credible written explanation as to why Ms. Serian was not entitled to a reasonable accommodation.

69. As a direct and proximate result of the practices complained of in the foregoing paragraphs, Ms. Serian has suffered actual pecuniary and non-pecuniary damage.

70. Ms. Serian's damages include, but are not limited to, lost earnings and benefits, emotion suffering, embarrassment and harassment.

71. JetBlue, with intent and/or reckless indifference, was aware of these unlawful practices, but allowed them to continue and damage Ms. Serian.

### ii.     **RETALIATION IN VIOLATION OF TITLE VII AND THE ADA**

72. JetBlue knowingly retaliated against Ms. Serian for objecting to their blatant discrimination and failure to accommodate a physical disability.

73. JetBlue was aware that Ms. Serian was engaged in the protected activity of making her claim of discrimination.

74. Because Ms. Serian objected to the discriminatory conduct of JetBlue, they engaged in a campaign of retaliation against Ms. Serian.

75. After Ms. Serian had an investigatory hearing with JetBlue, the mask mandate ended and she could have gone back to work, but in a retaliatory effort, JetBlue, instead terminated Ms. Serian for cyberbullying without any notice whatsoever.

76. Ms. Serian's termination was a thinly veiled attempt to terminate her because she had voiced her opinion about the detrimental effect of wearing face masks for prolonged periods especially at high altitudes.

77. JetBlue terminated Ms. Serian in a retaliatory manner because she voiced her opinion and shared scientific studies in violation of the ADA.

78. As a direct and proximate result of the unlawful retaliation by JetBlue, Ms. Serian has suffered damage to her career path, adverse job consequences, economic damages and she continues to suffer health effects to include but not be limited to physical and emotional stress and pain.

### iii. HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964

79. Ms. Serian was exposed to a pervasively hostile work environment by other crew members who took great issue with Ms. Serian expressing her opinion of the detrimental health effects of prolonged face mask wearing.

80. On a daily basis, Ms. Serian was confronted and ridiculed with other crew members knowing confidential information regarding her employment with JetBlue.

81. Ms. Serian suffered a prolonged social media attack by crew members insulting and harassing her.

82. JetBlue was well aware of the harassment Ms. Serian was being subjected to and turned a blind eye to all of Ms. Serian's complaints.

83. As a direct and proximate result of JetBlue failing to take action to eliminate bullying, Ms. Serian suffered emotional distress.

84. Ms. Serian found it almost impossible to interact and work with certain crew members as their behavior was openly hostile towards her.

85. Other crew members knew that JetBlue would take any action to stop their behavior so they continued to harass Ms. Serian, thus creating a hostile work environment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a trial by jury and demands a judgment against Defendants as follows:

A. Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated: (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; (ii) Americans with Disabilities Act, codified at 42 U.S.C. §§ 12101 et seq.; (iii) a determination that Defendants' foregoing acts of discrimination, harassment and retaliation against Plaintiff were intentional and willful;

B. Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C. Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits, including, among other things, in the amount of the wages and bonuses it is determined that the Plaintiff lost as a result of the Defendants' unlawful, discriminatory and retaliatory conduct, together with interest (and adjusted to make Plaintiff whole for any increased tax liability incurred by his receipt of a lump sum payment in a single year);

D. Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, emotional and physical pain, suffering and illness, together with interest;

E. Award the Plaintiff punitive damages;

F. Award the Plaintiff liquidated damages;

G. Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H. Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I. Such other and further relief as the court deems appropriate to be determined at trial.

Respectfully submitted on this 26th day of December 2023,

*Dawn Alba, Esq.*
_____
Dawn M. Aba, Esq, Attorney for Plaintiffs
F.B.N. 112814.
Alba Law Office, PA
50 SE Ocean Blvd., Suite 304
Stuart, FL 34494
(561) 584-0023 office
(772) 247-6784 cell
Dawn@Albalawoffice.com