UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 6:23-CV-02471

ELISABETH SERIAN,

     Plaintiff,

vs.

JETBLUE AIRWAYS CORPORATION,
a Foreign Corporation,

     Defendant.

_____/

**DEFENDANT JETBLUE AIRWAYS CORPORATION'S
RESPONSE TO PLAINTIFF'S MOTION TO WITHDRAW**

Defendant JetBlue Airways Corporation ("JetBlue" or "Defendant"), by and through its undersigned attorneys, respectfully files this Response to Dawn Alba, Esq.'s ("Ms. Alba") Motion ("Motion") to Withdraw as Counsel for Plaintiff Elisabeth Serian ("Plaintiff") [ECF No. 39].

**INTRODUCTION**

JetBlue respectfully submits this Response to the Motion to assert two key arguments: (1) based on the undersigned counsel's recent communications with Ms. Alba over the past two weeks, it appears that she may be attempting to withdraw in an improper effort to avoid sanctions for prosecuting Plaintiff's sole surviving claim in this action, a failure-to-accommodate claim under the Americans with Disabilities Act ("ADA"), which Ms. Alba and/or Plaintiff knew

or should have known was untimely and meritless throughout the entirety of this litigation; and (2) Ms. Alba's withdrawal from this case, which she acknowledges will leave Plaintiff to proceed on a *pro se* basis, is likely to cause JetBlue further prejudice and delay in obtaining resolution of this plainly meritless dispute, and will not otherwise promote the efficient administration of justice.

JetBlue respectfully submits that the timing of recent events is critical to the Court's evaluation of Ms. Alba's Motion and Plaintiff's ADA claim more generally. Ms. Alba is seeking to withdraw just days after the undersigned counsel pointed out to her how, based on Plaintiff's written discovery responses and all the pleadings and document discovery exchanged between the parties to date, it is now undisputed that Plaintiff's ADA claim was untimely filed with the U.S. Equal Employment Opportunity ("EEOC"). The undersigned further advised Ms. Alba that JetBlue was prepared to seek dismissal as a sanction pursuant to Fed. R. Civ. P. 11 if Plaintiff failed to either (a) provide factual and/or legal authority for the proposition that Plaintiff's ADA claim was timely filed; or (b) voluntarily dismiss the claim, with prejudice. In response, Ms. Alba did not provide any such authority, nor did she dismiss the Complaint. Instead, she filed the Motion.

Under the circumstances, JetBlue respectfully submits that, at a minimum, more information is needed about the reason(s) why Ms. Alba is seeking to withdraw before her Motion – and the continued viability of Plaintiff's ADA claim

– can be fully evaluated. *See United States v. Travers*, 996 F. Supp. 6, 14 (S.D. Fla. 1998) (noting that "the reasons why withdrawal is sought" is one of the key factors in evaluating such an application); *see also Telxius Cable Am. S.A. v. CHT Holdings, LLC*, No. 1:22-CV-22303, 2023 WL 3171994, at *3 (S.D. Fla. Feb. 10, 2023) (holding that a court may not grant a motion for leave for counsel to withdraw without assurance that there is "good cause" for withdrawal) (internal citations omitted).

## RELEVANT BACKGROUND

Plaintiff was employed by JetBlue between March 2014 through April 2022. [ECF Nos. 2, 35.]

On October 4, 2022, Plaintiff first filed a Charge of Discrimination with the EEOC in connection with her employment with JetBlue. [ECF Nos. 21-1, 35.]

After the EEOC's dismissal and issuance of a "Right to Sue" notice, Plaintiff commenced this action. In her Complaint, Plaintiff asserted three counts: (1) a failure-to-accommodate claim under the ADA based on JetBlue's denial of her request for an exception to the company's mandatory masking policy during the COVID-19 pandemic; (2) a retaliation claim under the ADA and Title VII of the Civil Rights Act of 1964 ("Title VII"); and (3) a hostile work environment claim under the ADA and Title VII. [ECF No. 2]

JetBlue subsequently moved to dismiss Plaintiff's Complaint in its entirety. [ECF Nos. 21, 29, 32.] Notably, JetBlue argued in part that Plaintiff's failure-to-

accommodate claim under the ADA should be dismissed as untimely for failure to exhaust administrative remedies. [ECF Nos. 21, 32, 35.] In particular, JetBlue argued that Plaintiff did not plausibly allege that she requested an accommodation or that JetBlue denied any such accommodation request within 300 days of her October 4, 2022 Charge of Discrimination. [ECF Nos. 21, 32, 35.] Plaintiff opposed JetBlue's motion on various grounds, but tellingly did not allege or otherwise attempt to argue that she requested an accommodation or that JetBlue denied any such accommodation request within 300 days of her October 4, 2022 Charge of Discrimination; instead, she largely argued that the Court should disregard the Charge of Discrimination. [ECF No. 29, at 18-19.]

On July 11, 2024, the Court granted JetBlue's motion to dismiss as to the second and third counts of Plaintiff's Complaint, but denied JetBlue's motion as to the first count, *i.e.*, Plaintiff's failure-to-accommodate claim under the ADA. [ECF No. 35.] Specifically, the Court found that, "[a]lthough Plaintiff's claim is limited by this time period [alleged discriminatory acts that occurred within 300 days of October 4, 2022], her general statement that she 'filed her EEOC grievance with the EEOC' and 'complied with all pre-filing requirements' is sufficient to survive a motion to dismiss.'" [ECF No. 35, at 6.]

Thereafter, JetBlue filed an Answer [ECF No. 36], and the parties commenced discovery pursuant to the Court's Orders dated February 23, 2024

4

[ECF No. 18] and May 10, 2024 [ECF No. 34].

Critically, Plaintiff's written discovery responses and the documents exchanged by the parties to date have unequivocally demonstrated that Plaintiff did not timely exhaust her administrative remedies, and that her surviving failure-to-accommodate claim under the ADA is meritless. Put simply, it is now undisputed that Plaintiff's failure-to-accommodate claim is premised on JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request – an allegedly discriminatory act that occurred 790 days before she filed her October 4, 2022 Charge of Discrimination.

*First*, in Plaintiff's Second Amended Reponses to Defendant's Requests for Admission (attached hereto as Exhibit "A"), Plaintiff admits that she first requested an accommodation from JetBlue on July 16, 2020 (RFA No. 1); that JetBlue informed her that her accommodation request was denied on or about August 5, 2020 (RFA No. 2); and that Plaintiff never requested another accommodation from JetBlue after that (RFA Nos. 3-4). These admissions are fatal to Plaintiff's failure-to-accommodate claim, and they are consistent with all the other pleadings and discovery produced by Plaintiff and otherwise exchanged by the parties to date.

*Second*, in Plaintiff's Amended Responses to Defendant's Interrogatories (which were verified under penalty of perjury by Plaintiff, and which are attached hereto as Exhibit "B"), Plaintiff identified and described the last communication

5

with JetBlue regarding her July 16, 2020 accommodation request as having occurred on or about August 6, 2020 (Interrogatory No. 5), when she received an email from JetBlue's dedicated accommodations team confirming in writing that, as first communicated to Plaintiff by phone on August 5, 2020, her accommodation request had been denied.

*Third*, Plaintiff does not otherwise allege or assert anywhere in her Charge of Discrimination, in her Complaint, in her Opposition to JetBlue's Motion to Dismiss the Complaint, in her Second Amended Responses to JetBlue's Requests for Admission, or in her Amended Responses to Defendant's Interrogatories that she ever requested an accommodation from JetBlue after July 2020; or that JetBlue denied any such accommodation request after August 2020.

*Fourth*, the undersigned counsel can truthfully represent that, in response to Plaintiff's Document Requests, which requested all documents relating to Plaintiff's request(s) for and JetBlue's denial(s) of any accommodation requests, Plaintiff has not produced any documents showing that she ever requested an accommodation from JetBlue after July 16, 2020, or that JetBlue denied any accommodation request after August 5, 2020.

To the contrary, the only documentation between Plaintiff and JetBlue regarding an accommodation after August 5, 2020 that has been produced or otherwise referenced by the parties to date is a medical form that Plaintiff

6

admittedly sent to JetBlue's dedicated accommodations team "inadvertently" in March 2022. (*See* JB000909-910, attached hereto as Exhibit "C"; *see also* RFA No. 6.) Significantly, this documentation plainly demonstrates that, on or about March 22, 2022, Plaintiff submitted documentation to JetBlue's ADA Compliance team, which prompted a member of that team to ask Plaintiff if she was "requesting a new accommodation" and "[i]f so, [to] please provide [her] availability next week for a call." (*See id.*) In response, Plaintiff wrote, "I'm not sure what y'all would have received? I'm in the process of renewing my fmla [*sic*]. Is that what you're referring to?" (*See id.*) The ADA Compliance team member then responded to Plaintiff that "it seems your doctor faxed us completed ADA forms"; informed Plaintiff that she could "continue her FMLA claim through Sedgwick" (JetBlue's third-party leave administrator); and directed Plaintiff to contact the ADA Compliance team in the event that her FMLA leave request was denied or if she needed an 'ADA request in the future." (*See id.*) However, in her Second Amended Responses to JetBlue's Requests for Admission, Plaintiff admitted that she never responded to the ADA Compliance team (RFA Nos. 6-7) or ever requested an accommodation after July 2020 (RFA No. 1).

In sum, Plaintiff does not allege – and has not produced any documentary evidence –  that she ever requested another accommodation after JetBlue denied her accommodation request on August 5, 2022. To the contrary, Plaintiff <u>admits</u>

that she did not do so (RFA Nos. 3-4).

Given the foregoing, the undersigned reached out to Ms. Alba via email on October 9, 2024 "in good faith, as a professional courtesy, and to avoid both the parties and the Court incurring additional litigation costs and expenses." (A copy of this email, and the entire relevant email thread regarding these issues, is attached hereto as Exhibit "D.") The undersigned laid out all of the same issues discussed above and advised Ms. Alba that "it is now undisputable that Plaintiff's sole surviving claim in this action – her failure-to-accommodate claim under the ADA – was not timely filed with the EEOC and must be dismissed for failure to exhaust administrative remedies." (*See* Exhibit "D.") Further, the undersigned requested that Ms. Alba should either (1) "do the right thing here and voluntarily dismiss [Plaintiff's] claim"; or (2) "provide me with substantive legal authority supporting the proposition that Plaintiff's surviving failure-to-accommodate claim is timely and should not otherwise be dismissed for failure to exhaust administrative remedies." (*See id.*)

On October 17, 2024, Ms. Alba responded via email, writing that "plaintiff's position remains unchanged" and asserting that the "300 day[] [filing requirement] does include the timeframe for an ongoing violation that can endure or recur over a period of time." (*See id.*)

Later that day, the undersigned observed that Ms. Alba's theory of liability

8

– that the purportedly ongoing impact of JetBlue's denial of Plaintiff's accommodation request on August 5, 2020, extended the 300-day period to file a Charge of Discrimination with the EEOC – had been explicitly rejected by the Eleventh Circuit. *See Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015) (holding that "the continuing violations doctrine was inapplicable in this case because … [plaintiff's] claims, each of which alleged a specific instance of Fulton County's failure to grant her requested accommodations, involved discrete acts of alleged discrimination"). Indeed, it cannot plausibly be disputed that, under controlling authority, the 300-day limitations period for a failure-to-accommodate claim under the ADA begins on the day that the employer takes the discrete action of denying the employee's accommodation request. *See id.; see also Helmke v. City of Port St. Lucie*, No. 22-CV-14398, 2023 WL 3178561, at *2 (S.D. Fla. Apr. 12, 2023), *report and recommendation adopted,* No. 22-14398-CIV, 2023 WL 3172613 (S.D. Fla. May 1, 2023) ("Because a claim for failure to accommodate involves discrete acts of alleged discrimination rather than a continuing violation, a plaintiff must file an EEOC charge within 300 days of the denial of the accommodation; otherwise, the claim is time barred. … Here, the denial of Plaintiff's request for flex time and additional technology constituted discrete discriminatory acts. Given that Plaintiff did not file an EEOC charge within 300 days of these discrete acts, she cannot pursue claims based on this conduct.");

*Wallace v. Shands Teaching Hosp. & Clinics, Inc.*, No. 1:20-CV-126-AW-GRJ, 2021 WL 11680311, at *2 (N.D. Fla. Jan. 21, 2021) (rejecting the applicability of the "continuing violations" doctrine in the ADA context, finding that "any relief based on Shands's accommodation denial is time barred").

On October 18, 2024, Ms. Alba again responded by email. (*See* Exhibit "D.") Ms. Alba abandoned the continuing violation doctrine and took a different tact. For the first time, and contrary to Plaintiff's discovery responses, Ms. Alba asserted that Plaintiff's failure-to-accommodate claim was "not based only on the denial from the ADA [Compliance team]" in August 2020, but also "the subsequent communications with [JetBlue's] CEO which led to an [April 18, 2022] meeting, which my client asserts … was a request again for some type of accommodation instead of wearing a mask."[1] (*See id.*)

Later that day, the undersigned responded with three key points: (1) Ms. Alba's new assertion that Plaintiff had requested an accommodation on April 18, 2022 was directly contrary to Plaintiff's own verified discovery responses and

---

[1] Specifically, and as referenced in Plaintiff's Charge of Discrimination, Plaintiff sent an unsolicited email to JetBlue's CEO on or about April 13, 2022 advising him that she would no longer comply with the company's mandatory mask policy; and then posted a copy of that email on Facebook along with comments inciting others to take similar action. [ECF No. 21-1.] Notably, although Plaintiff baselessly disputed the authenticity of the copies of that April 13, 2022 email and Facebook post in her Opposition to JetBlue's Motion to Dismiss, she recently conceded their authenticity in response to JetBlue's Requests for Admission (RFA Nos. 24-25).

otherwise unsupported by any documentary evidence whatsoever; (2) contemporaneous documentation produced by the parties plainly demonstrates that the true purpose of the April 18, 2022 meeting was to investigate the extent of Plaintiff's undisputed misconduct on April 13, 2022 (*i.e.*, her insubordinate, disrespectful, unprofessional, and wholly inappropriate email to JetBlue's CEO and other company leadership that she would no longer comply with the company's mandatory mask policy, as well as her subsequent posting of that email on Facebook along with comments inciting others to take similar action), and to discipline her by suspending her employment; (3) even if Plaintiff wished to now further amend her discovery responses to include an allegation that she re-requested an exception to JetBlue's mandatory masking policy as an accommodation on April 18, 2022, it would not salvage her ADA claim because "any subsequent request for the same accommodation does not, and cannot, restart the statute of limitations period," *see Campbell v. Boies, Schiller, Flexner LLP*, 543 F. Supp. 3d 1334, 1344 (S.D. Fla. 2021) (citing cases), and, regardless, employers have no obligation to provide accommodations they are terminating for otherwise undisputed misconduct, *see Novella v. Wal-Mart Stores, Inc.*, 459 F. Supp. 2d 1231, 1234 (M.D. Fla. 2006), *aff'd*, 226 F. App'x 901 (11th Cir. 2007). (*See* Exhibit "D.")

Thereafter, the parties scheduled a telephone call on October 21, 2024 to meet and confer regarding these issues in anticipation of JetBlue commencing

11

motion practice pursuant to Fed. R. Civ. P. 11. (*See id.*)

However, on the morning on October 21, 2024, just before their scheduled call, Ms. Alba sent an email to the undersigned in which she stated that "[a]s of Saturday, October 19, 2024 at approximately 2:18, my representation of the plaintiff in the case has terminated at her request." (*See id.*) Ms. Alba and the undersigned then spoke telephonically as scheduled, but Ms. Alba refused to discuss the merits of the case or provide any additional information or explanation regarding the reason for her anticipated withdrawal, citing the purported grounds of attorney-client privilege. However, Ms. Alba did state that Plaintiff might try to secure new counsel.

On October 22, 2024, Ms. Alba filed her Motion [ECF No. 39].

### APPLICABLE LEGAL STANDARD

In evaluating a motion to withdraw, courts weigh "the reasons why withdraw is sought; the prejudice withdrawal may cause the litigants; the delay in the resolution of the case which would result in the withdrawal; and, the effect of withdrawal on the efficient administration of justice." *Obermaier v. Driscoll*, 2000 WL 33175446, at *1 (M.D. Fla. Dec. 13, 2000). Further, "it is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal is for good cause." *See Patnaude v. Sears Pest Control, Inc.*, 2009 WL 10667065, at *2 (S.D. Fla. May 13, 2009) (quoting

*Mekdeci v. Merrell Nat'l Laboratories,* 711 F.2d 1510, 1521–22 (11th Cir. 1983)).

## **ARGUMENT**

Here, Ms. Alba tellingly filed her application to withdraw as counsel only 13 days after October 9th email in which the undersigned first put Ms. Alba on notice that Plaintiff's lone surviving failure-to-accommodate claim under the ADA appeared to be frivolous and that Defendant was prepared to seek sanctions pursuant to Fed. R. Civ. P. 11 if Plaintiff could not either (1) provide a factual and/or legal basis for the claim; or (2) voluntarily withdraw the claim. Ms. Alba did not do anything of those things; instead, she filed the Motion. Notably, Ms. Alba has not provided any explanation for her Motion other than her vague claim that Plaintiff terminated Ms. Alba's representation – again, a mere 11 days after the undersigned's October 9th email.

Given that Ms. Alba has represented Plaintiff since before this action was commenced in December 2023, the most obvious inferences to be drawn from the sequence of events here are either (1) that Ms. Alba is attempting to avoid sanctions for commencing and then litigating an ADA claim that she knew or should have known was untimely and meritless or (2) that Plaintiff fired Ms. Alba because Ms. Alba recommended voluntary dismissal of the ADA claim and/or otherwise indicated that she would no longer represent Plaintiff in connection with the prosecution of that claim. However, given that Ms. Alba has not provided

any meaningful explanation to the undersigned about the circumstances of her withdrawal and her Motion is similarly bereft of any such explanation, the reasoning behind Ms. Alba's application – as well as whether she knowingly prosecuted a claim she knew to be baseless – remains unclear.

Moreover, should Ms. Alba be permitted to withdraw as counsel, JetBlue is likely to suffer delay and prejudice because the resolution of this case – as well as JetBlue's anticipated motion for sanctions (specifically, in the form of dismissal of the Complaint) pursuant to Fed. R. Civ. P. 11 – will ostensibly be stayed, postponed, or otherwise adjourned until Plaintiff – who would otherwise be proceeding on a *pro se* basis – secures new counsel or confirms that she does not intend to do so. Relatedly, permitting Ms. Alba's withdrawal will not result in the efficient administration of justice, but will only serve to delay such justice while a plainly untimely and meritless claim remains on this Court's docket.

In her Motion, Ms. Alba makes two disingenuous statements to support the proposition that "Defendant will not be prejudiced by any delay in the matter."

First, she asserts that "there are no pending responses due from Plaintiff." This is not accurate – Plaintiff's discovery responses remain deficient in various respects (*e.g.*, Plaintiff has still not produced a HIPAA form so that JetBlue can procure her medical records that purportedly support her claim that (i) she has a disability within the meaning of the ADA; and (ii) assuming she had such a

disability, her disability was exacerbated or otherwise impacted by JetBlue's mandatory mask policy), and the undersigned has sent Ms. Alba numerous emails about these deficiencies, including on September 30, 2024; October 2, 2024; and October 4, 2024. Indeed, in the October 9th email to Ms. Alba that prompted her withdrawal, the undersigned explicitly advised Ms. Alba that "I have additional discovery deficiencies I would like to discuss with you, but we have a more pressing, threshold matter to resolve first that will likely moot these discovery issues." (*See* Exhibit "D'") Ms. Alba's Motion has already delayed resolution of these discovery deficiencies, and her withdrawal would only cause further delay.

Second, Ms. Alba asserts that "Plaintiff is not seeking any extension of time, or to stay the matter" to support the proposition that "Defendant will not be prejudiced by any delay in the matter." However, Ms. Alba overlooks the reality that it is common practice for Courts to stay proceedings or extend deadlines after counsel is withdrawn or substituted – especially if the party at issue would be an individual otherwise forced to proceed on a *pro se* basis, as Plaintiff would here.

Plaintiff, with Ms. Alba's help, has already forced both JetBlue and this Court to expend significant time and resources on a failure-to-accommodate claim that is undisputedly untimely given that it is undisputedly premised on JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request – which is undisputedly more than 300 days before Plaintiff filed her October 4, 2022 Charge

15

of Discrimination. Respectfully, Ms. Alba should not be permitted to prosecute such a transparently baseless claim for nearly a year in federal court and then withdraw as counsel without providing any explanation whatsoever, and without facing any consequences – especially not when it would waste even more of JetBlue's and the Court's time and resources.

Instead, JetBlue respectfully submits that, under the unusual circumstances presented here, the Court should deny Ms. Alba's Motion and exercise its inherent authority to dismiss Plaintiff's surviving ADA claim *sua sponte*; or, in the alternative, schedule a conference or hearing regarding these issues. *See Davis v. Polk Cnty. Sheriff's Off.*, 170 F. App'x 598, 600 (11th Cir. 2005) (unpublished opinion) (affirming district court's *sua sponte* dismissal of plaintiff's amended complaint after determining that plaintiff had filed to file her underlying EEOC charge within 300 days of any alleged discriminatory act); *see also Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015) (observing that district courts have "the inherent power to bring up the question of sanctions and answer it") (collecting cases); *Coleman v. St. Lucie Cnty. Jail*, 433 Fed.Appx. 716, 718 (11th Cir. 2011) (citing Fed. R. Civ. P. 41(b) and *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005)); *Davis v. Kvalheim*, 261 Fed.Appx. 231, 234 (11th Cir. 2008) (recognizing that "district courts have the inherent power to *sua sponte* dismiss frivolous suits without giving notice to the parties") (citing *Jefferson*

16

*Fourteenth Assocs. V. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 (11th Cir. 1983));

*Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985) ("[C]ourts have

'inherent power' to dismiss an action *sua sponte* as a sanction.") (quoting *Link v.*

*Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

## **CONCLUSION**

WHEREFORE, JetBlue respectfully requests that this Court deny Plaintiff's

Motion; and issue any further relief that the Court deems just and reasonable.

Dated:  October 23, 2024

Respectfully submitted,

By: */s/ Raymond J. Berti*
Raymond J. Berti
*Admitted pro hac vice*
Email: Raymond.berti@akerman.com
**AKERMAN LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Tel: (212) 880-3800
Fax: (212) 880-8965

 and

Ashlea A. Edwards
Florida Bar Number: 117691
Email: ashlea.edwards@akerman.com
**AKERMAN LLP**
50 North Laura St., Suite 3100
Jacksonville, Florida 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

*Counsel for Defendant JetBlue Airways*
*Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2024, a true and correct copy of the foregoing has been filed Court using the CM/ECF system, which will send an electronic notice to all counsel of record.

By:   */s/ Raymond J. Berti*
Raymond J. Berti